MONROE ET AL., APPELLANTS, v. BROWN, ATTORNEY GENERAL
ET AL., APPELLEES.
RIZEK ET AL., APPELLANTS, v. BROWN, ATTORNEY GENERAL,
ET AL., APPELLEES.
PRICE, APPELLANT, v. BROWN, ATTORNEY GENERAL, ET AL.,
APPELLEES.
BROWN, ATTORNEY GENERAL, APPELLEE, v. HICKMAN,
APPELLANT.

(Nos. 77AP-839, 77AP-896, 77AP-897 and 77AP-953—
Decided March 28, 1978.)

*Messrs, Weiner, Lippe & Cromley,* for appellants.
Mr. *William J. Brown,* attorney general, Mr. *Michael E. Zatezalo,* Ms. *Toba Jeanne Feldman* and Mr. *Bruce Rakay,* for appellees.

REILLY, J.   This is an appeal from judgments of the Court of Common Pleas of Franklin County. These four cases have been consolidated for purposes of this appeal.

The records indicate that there was a referee's hearing and memoranda were filed by counsel, but there were no findings of fact. Appellants' cases are based upon petitions to quash appellee's request for information, which we quote:

"1. The Attorney General has requested certain information from the petitioner, a copy is attached and marked Petitioners exhibit 'A.'

"2. Said request is pursuant to Section 109.24 Ohio Revised Code.

"3. Petitioner is not a charitable trust as provided by Section 10923.1 *et seq.* of the Ohio Revised Code.

"4. Petitioner further says that a reading of said sections would indicate that the Attorney General does not have the authority to request said information in that the petitioner is not a trustee or member of any charitable trust.

"5. Petitioner does not have the obligation to supply any of the requested information because he does not deal in or with 'Charitable trusts'.

"Wherefore, Petitioner prays that the motion to quash be sustained and that respondents be ordered to rescind their request for information."

The information requested was the following:

"Pursuant to Section 109.24 of the Ohio Revised Code, the Attorney General hereby requests you to produce and/or open for inspection, copying or reproduction the following books and papers:

"I. All records relating to the operation of schemes of chance or games of chance at Union Station, Northern Lights Shopping Center, 3357 Cleveland Avenue, Columbus, Ohio, from May of 1976 to the present.

"These records should include all original writings of any nature whatsoever and all non-identical copies thereof, in your possession, custody or control regardless of where located, including but not limited to:

"(a) Any lease agreements entered into in connection with the conduct of schemes or games of chance.

"(b) Any contracts or other written agreements entered into in connection with the conduct of schemes or games of chance.

"(c) All memoranda, correspondence, communications and reports relating to the conduct of schemes of chance or games of chance.

"(d) All daily flow sheets or other daily records pertaining to the conduct of schemes or games of chance and recording such items as opening bank, number of chips

or tokens sold, gross receipts, gross payments or prizes, receipts and payouts itemized as to type of scheme or game of chance, closing bank, expenses, net profit.

"(e) Any cash receipts and disbursement journals pertaining to schemes or games of chance.

"(f) Any attendance records pertaining to schemes or games of chance.

"(g) Any payroll records pertaining to schemes or games of chance.

"(h) Any invoices, vouchers, or receipts pertaining to the conduct of schemes or games of chance.

"(i) All bank statements, checkbooks, cancelled checks, and deposit slips pertaining to any account(s) into which proceeds from the conduct of schemes or games of chance have been deposited.

"(j) All receipts, cancelled checks or other records containing the names of all charitable organizations or purposes to which proceeds from the conduct of schemes or games of chance have been disbursed.

"II. Any and all other related documents that verify the above requested records. If originals and/or nonidentical copies of the above records are not available, identical copies of original documents and copies of non-identical copies may be substituted."

There doesn't appear to be any question that appellants advertised they were conducting charitable festivals and operating casino-type gambling. In any event, the petition to quash the attorney general's subpoena in each of these consolidated cases was overruled. The basic decision and entry reads as follows:

"This cause has been submitted to this Court for ruling on the question of whether or not the Attorney General has the authority to subpoena certain books or records relating to the operation of games of chance by the petitioners. In light of the broad enabling language used in Revised Code Section 109.24, which gives the Attorney General the power to 'investigate *transactions* and *relationships* of trustees of a charitable trust,' and to 'require the production of *any books and papers relevant to the in-*

*quiry*,' this Court has concluded that the petition to quash the Attorney General's subpoena should not be found well taken.

"As lessors, the petitioners receive the proceeds from the operation of the games of chance and disburse a part of these proceeds to charitable organizations after deducting certain expenses. Because of this it must follow that the Attorney General can make appropriate inquiry as to whether or not the proceeds which are being received are being appropriately administered on behalf of the charitable organizations. If this were not the case, then the intent of R. C. 109.24 to hold charitable organizations accountable to the public could be completely frustrated merely by having a for profit corporation control the financial operations of a charitable organization. Since the petitioners have a fiduciary duty to account to the charitable organization with respect to money it receives from its operations, this Court has concluded that the legislature intended to include parties such as the petitioners herein within its broad term of 'trustees' over whom the Attorney General has the power to investigate.

"Accordingly, the petition to quash the Attorney General's subpoena is hereby overruled."

This appeal has now been duly perfected upon the cases as consolidated, including the following assignments of error:

"1. The Trial Court erred in finding appellant to be a charitable trust for purposes of Ohio Revised Code Section 109.24.

"2. The trial court erred in applying Ohio Revised Code section 109.23 et seq. rather than Ohio Revised Code section 2915.01 et seq.

"3. The trial court erred in refusing to quash the request for information for the failure of appellee to specifically state his purpose for such a request."

In substance, appellee has requested appellants to produce financial records and documents pertaining to the operation of their gambling operations allegedly upon behalf of charitable organizations. The request was

filed pursuant to R. C. 109.24 which, in pertinent part, reads as follows:

"* * * The attorney general may investigate transactions and relationships of trustees of a charitable trust for the purpose of determining whether or not the property held for charitable, religious, or educational purposes has been and is being properly administered in accordance with fiduciary principles as established by the courts and statutes of this state. The attorney general is empowered to require the production of any books or papers which are relevant to the inquiry. * * *"

Appellants' first and second assignments of error are substantially interrelated. Therefore, they are considered together.

The purpose of this information is to insure that a reasonable percentage of proceeds from these casino operations is being applied to charitable purposes. The trustees of the charitable trusts involved have a fiduciary duty to keep expenses at a reasonable figure. Trust funds are not permitted to be applied to the private gain of a trustee or those in his employ. Appellants allege that they are not a charitable trust or charitable trustees under R. C. 109.23, and, consequently, the Attorney General's information is not applicable. R. C. 109.24, however, empowers the Attorney General to require the production of any books or papers which are relevant to the inquiry. Thus, even if petitioners are not charitable trusts or trustees, as defined by R. C. 109.23, the Attorney General still has power to require them to produce books or papers relevant to these casino operations. Actually, any other constructions of R. C. 109.24 would, in effect, nullify the statute.

In any case, appellants assert that the foregoing statute is not applicable to them. Nevertheless, R. C. 109.23 defines a charitable trust as follows:

"(A) 'Charitable trust' means any fiduciary relationship with respect to property arising under the law of this state or of another jurisdiction as a result of a manifestation of intention to create it, and subjecting the person by whom the property is held to fiduciary duties to deal with

the property within this state for any charitable, religious or educational purpose.''

Consequently, although appellants conceivably would not be directly concerned, the funds they received from the operation of games of chance involve a fiduciary relationship. Therefore, even if appellants were operating their casino-type gambling operations under R. C. 2915.02(C), as counsel contends in its brief, R. C. 109.24 would still remain applicable. From whatever viewpoint, the statute grants the Attorney General power to investigate the transactions and relationships of trustees of a charitable trust. Hence, the statute is broad enough to allow appellee to obtain the information sought in this case. It is noted that there is apparently no dispute that appellants were operating Las Vegas-style gambling. Accordingly, appellants' first and second assignments of error are not well taken and are overruled.

Appellants' third assignment of error is also without merit. The record shows the information requested, as quoted above, is not unreasonable. In any event, there is no actual evidence in the record to support the allegations in appellants' petitions to quash the requests for information. Therefore, appellants' third assignment of error is overruled.

Whereupon, for the foregoing reasons, the judgments of the trial court are affirmed.

*Judgment affirmed.*

STRAUSBAUGH and McCORMAC, JJ., concur.